## Case No. 50.

### ADAMS v. BURKS.

[Holmes, 40;[1] 4 Fish. Pat. Cas. 392; 1 O. G. 282.]

Circuit Court, D. Massachusetts. March 6, 1871.[2]

PATENTS FOR INVENTIONS— BONA FIDE PURCHASER —USE OF PATENTED ARTICLE —RIGHTS OF TERRITORIAL ASSIGNEE.

1. When a patented product passes lawfully into the hands of a purchaser without condition or restriction, it is no longer within the monopoly conferred by the patent or under the protection of the patent law.

[Cited in Hill v. Whitcomb. Case No. 6,502. Followed in McKay v. Wooster, Id. 8,847; Hobbie v. Smith. 27 Fed. Rep. 662; Hobbie v. Jennison, 40 Fed. Rep. 891.]

[See note at end of case.]

2. The purchaser of a patented article lawfully manufactured and sold within his territory, without condition or restriction, by a territorial assignee of the patent, may use or sell it in another territory for which another person holds an assignment of the same patent.

[Cited in McKay v. Wooster. Case No. 8,847; Hill v. Whitcomb, Id. 6,502. Limited in Hatch v. Adams, 22 Fed. Rep. 437. Followed in Case No. 8,847; Hobbie v. Smith. 27 Fed. Rep. 662; Hobbie v. Jennison, 40 Fed. Rep. 891.]

[As to the right to sell in another territory, see note at end of case.]

In equity.

Bill in equity [by James Adams against Alpheus Burks] for an injunction to restrain alleged infringement of letters-patent [No. 38,713] for an improvement in coffin lids granted James S. Merrill and George W. Horner, May 26, 1863, and for an account. The defendant filed a plea to the whole bill. The pleadings and facts are stated in the opinion.

E. H. Pierce, for complainant. L. S. Dabney, for defendant.

SHEPLEY, District Judge. The complainant in this case is the assignee of a territorial right, for the towns of Natick and Sherborn in Massachusetts, in the patent issued to Merrill & Horner, for a new and useful improvement in coffin lids. The defendant is charged in the bill with an infringement of the complainant's rights under the patent, in the town of Natick. The defendant by plea sets out in defence that Merrill & Horner had assigned to Lockhart & Seelye of Cambridge, all their right, title, and interest in the invention secured by the letters-patent, for, to, and in a circle whose radius is ten miles, having

[1][Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

[2][Affirmed by supreme court, 17 Wall. (84 U. S.) 453.]

the city of Boston as its centre. (Such a circle would not, upon any construction of the terms of the grant, include the towns of Natick and Sherborn.) Defendant's plea further sets out that he is an undertaker, and that in his business as an undertaker he has used and sold no coffins containing the invention secured by the letters-patent, except such coffins containing said invention as have been manufactured by Lockhart & Seelye, within a circle whose radius is ten miles, having the city of Boston as its centre, and sold within said circle by said Lockhart & Seelye, without condition or restriction. The case is set down for hearing on bill and plea; the facts in the case for the purposes of this hearing being admitted, and not in controversy.

The only question presented in the case is this: Does the purchase of a patented article, lawfully manufactured and sold without restriction or condition within his territory, by the territorial assignee of a patent right, convey to the purchaser the right to use or sell the article in another territory for which another person has taken an assignment of the same patent? When a patented product passes lawfully into the hands of a purchaser without condition or restriction, it is no longer within the monopoly or under the protection of the patent act, but outside of it. Chaffee v. Boston Belting Co., 22 How. [63 U. S.] 217; Bloomer v. Millinger, 1 Wall. [68 U. S.] 350; Aiken v. Manchester Print Works, [Case No. 113.] In Goodyear v. Beverly Rubber Co., Id. 5,557, Mr. Justice Clifford, commenting upon the cases of Bloomer v. McQuewan, 14 How. [55 U. S.] 549, and Wilson v. Rousseau, 4 How. [45 U. S.] 646, says: "Both of those cases affirm the rule, that when the patented machine rightfully passes to the hands of a purchaser from the patentee, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly, and is no longer under the peculiar protection granted to patented rights." It is clear that by such a sale the purchaser acquires an absolute title to the manufactured product which is the subject of a patent, and may deal with it in the same manner as if dealing with any other kind of property. He may use it, repair it, improve upon it, or sell it. Subsequent purchasers acquire the same rights as the seller had, and may do with the article, or its materials, whatever the first purchaser could have lawfully done if he had not parted with the title. Undoubtedly, the assignee or licensee of the right to make and vend the patented product is bound by his contract, and cannot exceed it.

In this case, the assignee of the territorial right for Boston and its vicinity was fully authorized to make the patented article and sell it in the market. When, therefore, he sold the patented coffins, the royalty upon

them was paid, and the purchaser took the property discharged of the peculiar privileges secured by the patent. If this were not so, the purchaser of a manufactured patent article of wearing apparel might be liable for the use of the patented article in every town and city through which he might travel, in which there might be an assignee of a district [distinct] territorial right, although he had purchased it of one having a lawful right to make and sell it, so as to convey an absolute and unrestricted title. Defendant's plea adjudged good.

[NOTE. On complainant's appeal, this decree was affirmed by the supreme court. Mr. Justice Miller, in delivering the opinion of the court, said: "It seems to us that although the right of Lockhart & Seelye to manufacture, to sell, and to use these coffin lids was limited to the circle of ten miles around Boston, that a purchaser from them of a single coffin acquired the right to use that coffin for the purpose for which all coffins are used; that, so far as the use of it was concerned, the patentee had received his consideration, and it was no longer within the monopoly of the patent. * * * The right to manufacture, the right to sell, and the right to use, are each substantive rights, and may be granted or conferred separately by the patentee. But, in the essential nature of things, when the patentee, or the person having his rights, sells a machine or instrument whose sole value is in its use, he receives the consideration for its use, and he parts with the right to restrict that use. The article, in the language of the court, passes without the limit of the monopoly, (Bloomer v. McQuewan, 14 How.—55 U. S.—549; Mitchell v. Hawley, 16 Wall.—83 U. S.—544:) that is to say, the patentee or his assignee having in the act of sale received all the royalty or consideration which he claims for the use of his invention in that particular machine or instrument, it is open to the use of the purchaser without further restriction on account of the monopoly of the patentees. If this principle be sound as to a machine or instrument whose use may be continued for a number of years, and may extend beyond the existence of the patent, as limited at the time of the sale, and into the period of a renewal or extension, it must be much more applicable to an instrument or product of a patented manufacture which perishes in the first use of it, or which, by that first use, becomes incapable of further use, and of no further value. Such is the case with the coffin lids of appellant's patent. A careful examination of the plea satisfies us that the defendant, who, as an undertaker, purchased each of these coffins, and used it in burying the body which he was employed to bury, acquired the right to this use of it, freed from any claim of the patentee, though purchased within the ten-mile circle, and used without it." Mr. Justice Bradley filed a dissenting opinion, taking the ground that the right of the territorial assignees "consisted of the exclusive right to make, use, and vend the improved coffin lid within the limited territory described, but did not include any right to make, use, or vend the same outside of those limits. As the assigned right to make the lids was a restricted right limited to the territory, so the assigned right to use them was a restricted right limited in the same manner. Each right is conveyed by precisely the same language." Adams v. Burks, 84 U. S. (17 Wall.) 453.

[In Hatch v. Adams, 22 Fed. Rep. 434, the issue was as to the right of a purchaser of a patent bed bottom from the territorial assignee of the patentee to sell the bed bottom, in the "course of trade," outside the territory

granted to such assignee. The complainant, in seeking to enjoin such sales, contended that, although the sale of a patented article "for use in the ordinary affairs of life" withdrew it from the monopoly of the patent, the sale of the right to "sell the article" was a conveyance of a portion of the franchise. In disposing of the case, Judge McKennan distinguished Adams v. Burks, Case No. 50, remarking that, although Judge Shepley's opinion in that case is "broad enough to cover the right to sell, as well as the right to use, a patented article outside of a restricted locality, only the latter right was involved in the case, and what was said by the learned judge touching the right to sell was clearly obiter; and, when the case reached the supreme court, that court expressly treated the right to manufacture and sell and the right to use a patented article as distinct substantive rights, and decided the law only as it related to the exercise of the latter right."

[In McKay v. Wooster, Case No. 8,847, it appeared that the assignee of the territory east of the Rocky mountains, for the manufacture and sale of a patented case for the transportation of eggs, sold cases to dealers in Iowa, who filled them with eggs, and shipped to the Pacific coast, where the eggs were sold, and the cases disposed of for what they would bring. The assignee of the Pacific coast territory sought to restrain this alleged infringement of his rights, but the bill was dismissed by Judge Sawyer, who held that the sale of the case by the territorial assignee removed it from the monopoly of the patent, and that the purchaser or those claiming under him could use it until worn out. This decision was afterwards affirmed by the supreme court, at the October term, 1873, but no opinion was filed.

[Concerning the right to sell, the circuit courts have decided that one who purchases a patented article from the owner of the patent right for a certain territory has no right to sell the same, "in the course of trade," in the territory for which another owns exclusive rights. Hatch v. Adams, 22 Fed. Rep. 434; Hatch v. Hall, Id. 438, 30 Fed. Rep. 613; Standard Folding-Bed Co. v. Keeler, 37 Fed. Rep. 693, 41 Fed. Rep. 51; Graff v. Boesch, 33 Fed. Rep. 279, 10 Sup. Ct. Rep. 378. Judge Hawley, in California Electrical Works v. Finck, 47 Fed. Rep. 583, held that the sale of a patented article by a territorial assignee within his own territory does not confer upon the purchaser of such articles the right to carry the same into the territory of another assignee, and there sell them, "in the usual course of trade," without the consent of the latter assignee.

[Another aspect of the question arose in Hobbie v. Jennison, 40 Fed. Rep. 887, where the assignee of the right to manufacture and sell a patented steam pipe for the state of Michigan sold a quantity of the pipe to a Detroit firm, knowing that it was to be resold and used in territory belonging to another. In considering the case, Mr. Justice Brown, at that time district judge for the eastern district of Michigan, said that he was strongly inclined to hold that one who sells a patented article for the "purpose of or knowing that it will be resold * * * in territory belonging to another is equally amenable to suit as if the sale were made in such other territory," as in line with the cases which hold that where a party makes one or more elements of a patented combination, with the intent that they shall be used in the completed combination, he is liable as an infringer; but upon the authority of Adams v. Burks, 17 Wall. (84 U. S.) 453, affirming Case No. 50, which involved the right of the assignee "to sell the patented article, to be used outside of such limited district," and which, the learned justice remarked, seemed not to be distinguishable from the present case, it was held that the sale

of the pipe within the vendor's territory carried the right to use it within territory owned by another, "notwithstanding the knowledge of both parties that a use outside of the territory is intended." From the report of the case, the question as to whether or not the re-sale of the pipe by the Detroit firm was a "sale," and in the "usual course of trade," as distinguished from the use, does not seem to have been presented. This case was afterwards affirmed by the supreme court, on the ground that the sale of the pipe was completed at Bay City, within the state of Michigan. Hobbie v. Jennison, 40 Fed. Rep. 887; s. c. 149 U. S. 355, 13 Sup. Ct. Rep. 879.]

---

### ADAMS, (BURNHAM v.)

[See Burnham v. Adams, Case No. 2,173.]

---

### ADAMS, (CHILD v.)

[See Child v. Adams, Case No. 2,673.]

---

### ADAMS, (CODRINGTON v.)

[See Codrington v. Adams, Case No. 2.937.]